UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JEDAIAH CONLAN,

                       Plaintiff,

    -against-

LIBERTY MUTUAL GROUP, INC., and
CHARLES BRUCE STARK,

                     Defendants.
_____

No. 23-CV-8947 (NSR)

**OPINION & ORDER**

| USDC SDNY |
|---|
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 11/13/2024 |

**NELSON S. ROMÁN, United States District Judge:**

Plaintiff, Jedaiah Conlan, ("Plaintiff"), brings this action against Liberty Mutual Group, Inc., and Charles Bruce Stark (collectively, "Defendants"), pursuant to New York common law and New York Executive Law § 290 ("NYSHRL"). The Amended Complaint alleges that Charles Bruce Stark ("Stark") sexually abused Plaintiff while they were both employed at Liberty Mutual Group ("Liberty Mutual") and that Liberty Mutual permitted the abuse to take place.

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant Liberty Mutual has moved to dismiss the Amended Complaint. ("Motion", ECF No. 28.) For the following reasons, Defendant Liberty Mutual's Motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

During the summer of 1992, Plaintiff worked as a paralegal in Liberty Mutual's White Plains office. (Amend. Compl. at 1.) At the time, Liberty Mutual maintained "field legal offices" where its "attorneys of record" would work. (*Id*. at 5.) Though these field legal offices were part of Liberty Mutual's network, they were independently named. (*Id*. at 5.) Stark was the named partner of one of these field legal offices, which was named "Stark, Burke & Lipton." (*Id*. at 5.) According to the Amended Complaint, Stark had a reputation of sexual activity with young boys

that was widely known to those in Stark, Burke & Lipton and Liberty Mutual. (*Id*. at 6.) Despite this reputation, Plaintiff was hired by Liberty Mutual and assigned to work for Stark at Stark, Burke & Lipton. (*Id*.) At the time of hiring, Plaintiff was over the age of eighteen and had recently graduated from college. (*Id*.)

Shortly after Plaintiff began working with Stark, Plaintiff experienced "frequent unwanted, inappropriate, and flirtatious comments" from Stark. (*Id*.) These comments then escalated into forcible touching, including grabbing Plaintiff's genitals on multiple occasions. (*Id*. at 7.) On one occasion, Stark called Plaintiff into his office, revealed his penis to Plaintiff, and then placed his penis on Plaintiff's shoulder and face while trying to coerce Plaintiff to perform sexual acts on him. (*Id*.) Plaintiff refused Stark's advances. (*Id*.) As a result, Stark retaliated against Plaintiff by threatening to "make [his] life … as difficult as possible." (*Id*. at 8). Stark then took to publicly demeaning Plaintiff and falsely reported that he was "late to work or insubordinate or generally a bad employee." (*Id*.) When Plaintiff reported Stark's behavior to administrators within Liberty Mutual, Plaintiff's employment was terminated. (*Id*. at 9) Plaintiff alleges that Liberty Mutual knew of Stark's behavior and reputation but intentionally disregarded it due to Stark's "high-level position at the company" and to "protect and shield him and the company." (*Id*.)

## PROCEDURAL HISTORY

On October 13, 2023, Plaintiff filed the original Complaint. (ECF No. 1.) On January 23, 2024, Plaintiff filed an Amended Complaint. (ECF No. 22.) The Amended Complaint is the operative complaint. Defendant filed this Motion on April 25, 2024. (ECF No. 28), as well as a memorandum of law ("Def.'s MoL.", ECF No. 30) and reply (ECF No. 31), in support thereof. Plaintiff filed an opposition to Def.'s MoL. (ECF No. 29.)

**LEGAL STANDARD**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether a complaint states a claim upon which relief can be granted, the court "begins by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown that the pleader is entitled to relief. *Id*.

**DISCUSSION**

Plaintiff's Amended Complaint asserts claims pursuant to New York common law and the NYSHRL. Specifically, Plaintiff alleges that Defendants committed torts of intentional infliction of emotional distress, sexual assault, and battery. Plaintiff also alleges that Defendants discriminated and created a hostile work environment in violation of the NYSHRL. Plaintiff also brings a claim of negligence against Stark individually, and a claim of prima facie tort against Liberty Mutual.

In their Motion, Liberty Mutual asserts several grounds for dismissal. Liberty Mutual asserts that Plaintiff's claims for intentional infliction of emotional distress and sexual assault fail because an employer cannot be held vicariously liable for the sexual misconduct of its employees since sexual misconduct is necessarily outside the scope of employment and not in furtherance of

Liberty Mutual's business. Further, Liberty Mutual argues that Plaintiff's claims of intentional infliction of emotional distress and prima facie tort should be dismissed because they are not properly pled and duplicative of one another. Additionally, Liberty mutual argues that Plaintiff's aiding and abetting claims under the NYSHRL must be dismissed because Stark's conduct cannot be imputed to Liberty Mutual and Liberty Mutual never actually participated in any of Stark's conduct. Finally, Liberty mutual argues that Plaintiff's claims of discrimination and hostile work environment under the NYSHRL cannot survive because Plaintiff cannot establish that any relevant conduct was motivated by Plaintiff's protected status.

### A. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, Plaintiff must properly allege four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993). The first element is the most difficult to satisfy and serves to filter out "petty and trivial complaints that do not belong in court." *Id*. The New York Court of Appeals has defined "extreme and outrageous" as conduct that goes "beyond all possible bounds of decency … regarded as atrocious, and utterly intolerable in a civilized community." *Fischer v. Maloney*, 43 N.Y.2d at 557, 402 N.Y.S.2d 991, 373 N.E.2d 1215.

Liberty Mutual argues that Plaintiff's claim for intentional infliction of emotional distress fails because Liberty Mutual's conduct was not extreme and outrageous. The Court disagrees. In recent decisions, New York courts have held that similar conduct was extreme and outrageous.[1]

---

[1]     The cases that Plaintiff brought to the Court's attention were either mischaracterized or misquoted or both. These cases do not support Plaintiff's position that the conduct alleged here was sufficiently extreme and outrageous.

*See Brown v. Riverside Church in City of New York*, 216 N.Y.S.3d 144 (App. Div. 2024) (holding that a local church could be found liable for intentional infliction of emotional distress for employing a known child molester as a youth basketball coach because providing a known child molester with ready access to potential child victims "goes beyond all possible bounds of decency and is atrocious and utterly intolerable in a civilized society"); *Novak v. Sisters of Heart of Mary*, 210 A.D.3d 1104, 1106, 180 N.Y.S.3d 187 (2022) (finding that a parochial school that had knowledge of one of its priests sexually abusing children and helped to conceal his abuse had engaged in extreme and outrageous conduct); *Eskridge v. Diocese of Brooklyn*, 210 A.D.3d 1056, 1058, 180 N.Y.S.3d 179 (2022) (holding that a diocese that had knowledge that one of its priests had sexually abused a teenager and permitted it to happen had engaged in extreme and outrageous conduct). Similarly, Plaintiff pleads that Liberty Mutual was aware of Stark's pattern of abuse, and yet Stark was still allowed to be employed at Liberty Mutual and permitted to work with young men such as Plaintiff. (Amend. Compl. at 6.) Further, Liberty Mutual directly assigned Plaintiff who, at the time, was a young man of Stark's appetite. (*Id*.) According to the Amended Complaint, Stark sexually abused Plaintiff who eventually directly reported this abuse to Liberty Mutual. (*Id*. at 9.) Upon learning of these allegation, Liberty Mutual did nothing to stop or prevent it. Instead, they fired Plaintiff to protect Stark and the company. (Amend. Compl. at 9.) Following the precedent of New York courts, this Court finds that an average member of the community would believe the allegations contained in the complaint to be outrageous. *See Brown*, 216 N.Y.S.3d at 152. (quoting Restatement Second of Torts § 46, Comment d)).

Accordingly, Plaintiff has plausibly pled that Liberty Mutual's conduct was sufficiently extreme and outrageous to satisfy a claim of intentional infliction of emotional distress.[2]

### B. Sexual Assault and Battery

Plaintiff asserts that Liberty Mutual is liable for Stark's sexual abuse under a theory of *respondeat superior*. Liberty Mutual, however, cannot be held responsible for Stark's conduct under a theory of *respondeat superior* because Stark's conduct was outside the scope of his employment. New York courts have regularly rejected such theories. *See Paul J.H. v. Lum*, 291 A.D.2d 894, 736 N.Y.S.2d 561 (2002) (rejecting theory that a church was liable under *respondeat superior* for a priest's sexual assault of a child because sexual abuse was not within the scope of the priest's employment); *N.X. v. Cabrini Medical Cent.*, 97 N.Y.2d 247, 251, 739 N.Y.S.2d 348, 765 N.E.2d 844 (2002) (finding that a hospital was not liable under *respondeat superior* for one of its physicians who sexually assaulted a patient because sexual abuse is not in furtherance of the hospital's business and a clear departure of the scope of employment); *Cornell v. New York*, 60 A.D.2d 714, 401 N.Y.S.2d 107, 108 (1977) (rejecting the theory that a school could be liable for a teacher's molestation of a student because the molestation was not in furtherance of the defendant's duties to his employer). New York courts have been consistent that this sort of conduct is not in furtherance of legitimate business and, therefore, cannot sustain a theory of liability under *respondeat superior*. Accordingly, Plaintiff fails to state a claim of sexual abuse against Liberty Mutual.

---

[2]    Given that Liberty Mutual had knowledge of Stark's history of sexual activity with young men and then assigned Plaintiff to be under his direct supervision, such facts are sufficient at the motion to dismiss stage to nudge Plaintiff's claim to plausible and not just conceivable.

### C.  Prima Facie Tort

Plaintiff alleges that Liberty Mutual committed a prima facie tort by intentionally disregarding Stark's abuse. The elements of prime facie tort are: "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142–43, 480 N.E.2d 349, 355 (1985) (citation omitted). The touchstone of the first element is "disinterested malevolence," which requires that the defendant's conduct was done "with the sole intent to harm." *Twin Lab'ys, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990). If there are other motives—profit, self-interest, or business concerns—then the first element cannot be met. *Id.*

Plaintiff's claim of prima facie tort fails for two reasons.[3] First, Plaintiff fails to plead disinterested malevolence. Second, Plaintiff fails to plead special damages. The Court will address each in turn.

The Amended Complaint does not adequately plead disinterested malevolence, which requires a sole intent to harm. Plaintiff claims that Liberty Mutual committed prime facie tort by permitting Stark's abuse, intentionally ignoring his conduct, and then terminating Plaintiff's employment. (Amend. Compl. at 13.) But Plaintiff also alleges throughout the Amended Complaint that Liberty Mutual intentionally disregarded Stark's abuse of Plaintiff "due to [Stark's] high-level position at the company." (Amend. Compl. at 6, 7, 8, 12.) Plaintiff goes on that "Liberty Mutual intentionally did nothing to stop Stark, and instead protected and shielded him and the

---

[3]    Liberty Mutual argues that Plaintiff's claim is duplicative. Federal Rule of Civil Procedure 8 permits alternative pleading, and the existence of a traditional tort should not foreclose Plaintiff the opportunity to plead in the alternative if another claim fails. *See Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc.*, *Loc. 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 406, 343 N.E.2d 278, 284–85 (1975). Once a traditional tort has been established, however, the prima facie tort would then be rendered academic and double recoveries would not be permitted. *Id.*

company." (*Id.* at 9.) This is flatly a business interest. Moreover, the Amended Complaint notes that Stark reported to others within Liberty Mutual that Plaintiff was a bad and insubordinate employee, which reinforces the notion that Plaintiff was terminated for business purposes. (Amend. Compl. at 8). With this additional motive for Plaintiff's termination contained within the Amended Complaint, Plaintiff cannot state a claim of prima facie tort.

Plaintiff has also failed to plead special damages. "A critical element of [prima facie tort] is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143, 480 N.E.2d 349, 355 (1985). New York law is clear that special damages must be pled with particularity. *See Bradley v. Nat'l R.R. Passenger Corp.* (Amtrak), 797 F. Supp. 286, 295 (S.D.N.Y. 1992). Estimated damages in round numbers without itemization do not satisfy this requirement. *See Shaitelman v. Phoenix Mutual Life Insurance Co.*, 517 F.Supp. 21 (S.D.N.Y.1980). Here, much less than alleging round numbers, Plaintiff alleges that "[he] has, is and will continue to suffer Special Damages in an amount to be determined at the time of trial, including, not limited to past and future medical care and loss of income." (Amend. Compl. at 13) Without specific, measurable damages, Plaintiff's allegations are insufficient to sustain a claim. Accordingly, Plaintiff has failed to state a claim of prima facie tort.

### D.  NYSHRL[4]

The Amended Complaint alleges that Liberty Mutual violated the NYSHRL for discriminatory practices and creating a hostile work environment. The Amended Complaint further alleges that Liberty Mutual violated the NYSHRL under theories of both primary liability and aiding and abetting liability.

### I.  Discrimination

---

[4]        Claims brought under the NYSHRL are assessed using the same standard as Title VII. As a result, the Court will include both NYSHRL and Title VII cases in its analysis.

To state a claim of discrimination at the motion to dismiss stage, a Plaintiff must plausibly allege that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). An adverse employment action is a materially adverse change in the terms and conditions of employment, which consists of something more than a mere alteration of job responsibilities and something more akin to termination or demotion. *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

Plaintiff fails to plausibly allege a claim of discrimination because he fails to establish that his sex or sexual orientation was a motivating factor for his adverse employment action. Plaintiff's termination is recognized as a sufficient adverse employment action such that he can satisfy the first element of discrimination under the NYSHRL. As it goes, Plaintiff claims that he reported Stark's abuse to administrators at Liberty Mutual and that he was then terminated. (Amend. Compl. at 9.) The problem is that the Amended Complaint goes no further. It does not assert, for example, that the administrators terminated Plaintiff because he was a male or upon learning that he was homosexual. For that matter, the Amended Complaint is generally unclear on what Plaintiff's sexual orientation is and an allegation of same-sex sexual abuse does not in any way indicate the victim's sexual orientation. On this issue, the Amended Complaint provides only a single conclusory allegation that "Defendants … maintain[ed] discriminatory working conditions, by subjecting him to … discriminatory disparate treatment … because of his gender and sexual orientation." (Amended Compl. at 15.). But such threadbare recitals of the elements of a cause of action with mere conclusory statements, do not suffice. *See Iqbal*, 556 U.S. at 678. Moreover, this single conclusory statement fails to connect Plaintiff's sex or sexual orientation as

the motivating factor for his termination as required. Accordingly, Plaintiff fails to state a claim of discrimination under the NYSHRL.

## II. Hostile Work Environment

A hostile work environment is a workplace that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To survive a motion to dismiss, a Plaintiff must plausibly "plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citation omitted). A court must look to the totality of the circumstances when reaching a determination, including looking at the frequency of the abuse, the severity of the abuse, and whether it unreasonably interferes with an employee's work performance.[5] *See Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (citation omitted). But a single act, if sufficiently severe, can be enough to sustain a claim. *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).

The Second Circuit has held that direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment. *See Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012). Several courts in this Circuit have found that intentionally touching or

---

[5]     "Conditions of employment" are different in the hostile work environment context than in the discrimination context. In the hostile work environment context, Plaintiff does not need to show an adverse employment action. Instead, "[i]t suffices to prove that a reasonable person subjected to the discriminatory conduct would find … that the harassment so altered working conditions as to make it more difficult to do the job." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 607 (2d Cir. 2006) (quoting *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring)).

grabbing a co-worker's genitals or intimate parts was sufficiently severe to state a claim for hostile work environment. *See Graham v. Cha Cha Matcha, Inc.*, No. 23 CIV. 9911 (PAE), 2024 WL 3540324 (S.D.N.Y. July 25, 2024) (finding that allegations that a male defendant forcibly grabbed a male Plaintiff's buttocks was sufficient to properly state hostile work environment claim); *Domingues v. Barton Chevrolet Cadillac*, No. 18 Civ. 7772 (PMH), 2021 WL 637016, at *5 (S.D.N.Y. Feb. 17, 2021) (holding that defendant grabbing plaintiff's breast stated a hostile work environment claim); *Wahlstrom v. Metro-N. Commuter R.R. Co.*, 89 F. Supp. 2d 506, 521 (S.D.N.Y. 2000) (concluding that forcibly hugging and slapping plaintiff's buttocks stated a hostile work environment claim); *Kurlender v. Ironside Grp., Inc.*, No. 18CV3839JFBAYS, 2019 WL 1317405 (E.D.N.Y. Mar. 22, 2019) (finding that unwanted touching by a male defendant of a male plaintiff was sufficient to withstand a 12(b)(6) motion for a hostile work environment claim). Here, Plaintiff pleads that Stark engaged in various kinds of harassing behavior that escalated over time. Plaintiff alleges that Stark grabbed Plaintiff's genitals on multiple occasions and then on one occasion exposed his own genitals to Plaintiff and then rubbed them on Plaintiff's shoulder and face while trying to coerce him into performing sexual acts. (Amend. Compl. at 7.) Taken as true, these allegations go beyond single incidents of forcible touching that other courts have found sufficient to state a claim for hostile work environment. As a result, Plaintiff has plausibly pled facts to establish that the complained of conduct was objectively severe.

The second prong of a hostile work environment is also plausibly pled because the Amended Complaint contains facts that suggest that the Plaintiff perceived the work environment to be abusive. Namely, that Plaintiff was "unable to bear" the abuse and "finally reported Stark's sexual abuse to administrators at Liberty Mutual in the White Plains Office."

(Amend. Compl. at 9.) The Amended Complaint also contains allegations that the Plaintiff "suffered physical and emotional trauma, … was incapacitated from performing normal tasks, [and] incurred medical expenses." (Amend. Compl. at 11.) Such allegations have been found sufficient to satisfy this element of hostile work environment. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 268 (2d Cir. 2023) (holding that evidence that Plaintiff sought medical treatment was sufficient to show that they perceived their environment to be hostile). Plaintiff has plausibly pled facts to establish the subjective element of a hostile work environment.

Liberty Mutual argues that Plaintiff's claim should fail because he does not plead that he is part of a protected class. This is not required. The NYSHRL protects against discrimination because of one's sex and its text draws no distinction between men or women receiving the benefit of its protection. *See* N.Y. Exec. Law §§ 290(3), 296(1)(a). The relevant case law tracks this understanding. *See Redd*, 678 F.3d at 175. The law in our Circuit makes clear that a Plaintiff must only plead that he was discriminated against *because of* his or her sex and not that he is a member of a protected class. *See Patane*, 508 F.3d at 113. Further, the Plaintiff has plausibly pled that (1) Stark was sexually attracted to young men; (2) Plaintiff was a young man at the time of the abuse; and (3) that Plaintiff was sexually targeted by Stark. These facts give rise to a plausible inference that Plaintiff was the victim of a hostile work environment because of his sex. *See Oncale v. Sundowner Offshore Services*, 523 U.S. 75 (1998). Accordingly, having established all three elements, Plaintiff has plausibly alleged a hostile work environment.

In this Circuit, even if a work environment is found to be abusive, a Plaintiff must also establish that the conduct which created the hostile environment should be imputed to the employer. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995). The Second Circuit has derived the rule that "if a plaintiff's supervisor is the alleged harasser, an employer will be liable

if the supervisor uses 'his actual or apparent authority to further the harassment.'" *Id*. In *Tomka*, the Second Circuit concluded that a supervisor using his authority to convene a business dinner where a sexual assault occurred was sufficient to establish a nexus between his supervisory authority and the assault. So too here. Plaintiff alleges that Stark, the named partner of the firm where Plaintiff worked and Plaintiff's direct supervisor, called Plaintiff into his office, presumably by using his supervisory authority, and then revealed his penis to Plaintiff and forcibly rubbed it on Plaintiff's body and attempted to coerce him into sexual acts. (Amend. Compl. at 7.) Accordingly, Plaintiff has plausibly pled that his supervisor used his authority to further his harassment such that Stark's conduct could be imputed to Liberty Mutual.

### III. Aiding and Abetting Liability

Plaintiff alleges that Liberty Mutual is liable for discrimination and for creating a hostile work environment in violation of the NYSHRL under theories of primary liability as well as aiding and abetting liability. Aiding and abetting liability, however, is only viable when an underlying violation has taken place. *See Falchenberg v. N.Y. State Dep't of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009). Because the Court finds that Plaintiff's discrimination claim, which would have established an underlying violation has not been adequately pled, the aiding and abetting liability for that claim is also necessarily dismissed. Having found that that Plaintiff has plausibly alleged a primary violation of a hostile work environment claim, the Court must address whether there is also aiding and abetting liability.

Liberty Mutual argues that direct individual liability is limited to "employers" under the NYSHRL. That is, those with ownership interest or supervisors who have the authority to hire and fire employees. *See Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2021 U.S. Dist. LEXIS 171219, at *50 (S.D.N.Y. Sep. 9, 2021). Because Stark has not been alleged to have

an ownership interest or the requisite authority to hire and fire, individual liability cannot attach, which also means that aiding and abetting liability cannot attach. This argument, however, is rendered moot because the New York Court of Appeals has held that the NYSHRL does not render "employers" individually liable. *See Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 457, 143 N.Y.S.3d 286, 291 (2021). Accordingly, Liberty Mutual is correct that aiding and abetting liability cannot attach through Stark's position as a supervisor.

That said, the Second Circuit has held the NYSHRL provides another avenue for aiding and abetting liability. In *Tomka*, the Circuit held that because § 296(6) of the NYSHRL states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so" that if a defendant "actually participates in the conduct giving rise to a … claim [he or she] may be held personally liable under the [NYSHRL]." 66 F.3d at 1317. Following *Tomka*, courts have held that a plaintiff who alleges that an employer has "encouraged, condoned, or approved" has "actually participated" in the discriminatory conduct and may rely on this conduct to prove aiding and abetting liability. *See Murtha v. New York State Gaming Comm'n*, No. 17 CIV. 10040 (NSR), 2019 WL 4450687 (S.D.N.Y. Sept. 17, 2019) (collecting cases). Here, Plaintiff has plausibly pled that both Stark and Liberty Mutual have engaged in conduct that created a hostile work environment. Moreover, Plaintiff has pled facts that indicate that Liberty Mutual took no action to stop or prevent Stark's abuse. (Amend. Compl. at 9.) Under New York Law, an "employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation." *State Div. of Hum. Rts. on Complaint of Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687, 487 N.E.2d 268 (1985). Condonation may be disproved by a showing that the employer investigated the complaint and took corrective action.

*Swiderski v. Urb. Outfitters, Inc.*, No. 14-CV-6307 (JPO), 2017 WL 6502221, at*7 (S.D.N.Y.

Dec. 18, 2017) (citation omitted). Because there is no indication that Liberty Mutual investigated

or took corrective action following Plaintiff's report of Stark's abuse, the Court finds that

Plaintiff has stated a claim of aiding and abetting liability against Liberty Mutual.

**Leave to Amend**

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R.

Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with

prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams*

*v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). Accordingly, the Court

dismisses Plaintiff's sexual battery claim, prima facie tort claim, and discrimination claim

without prejudice, granting leave to amend.

## CONCLUSION

For the foregoing reasons, Liberty Mutual's motion to dismiss the Amended Complaint is

GRANTED in part and DENIED in part. Liberty Mutual's Motion is GRANTED with respect to

the sexual battery claim, the prima facie tort claim, and the discrimination claim under the

NYSHRL. These claims are dismissed without prejudice. Liberty Mutual's Motion is DENIED

with respect to the intentional infliction of distress claim, the hostile work environment claim, and

the related aiding and abetting claim. Plaintiff is granted leave to file a Second Amended

Complaint as to any claims that have not been dismissed with prejudice. If Plaintiff chooses to do

so, Plaintiff will have until December 13, 2024, to file a Second Amended Complaint. Liberty

Mutual is then directed to answer or otherwise respond by January 13, 2025. The parties are

directed to submit a completed Case Management Plan by January 27, 2025.

If Plaintiff fails to file a Second Amended Complaint within the time allowed, and he or she cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice. Defendant Liberty Mutual is then directed to answer or otherwise respond by January 13, 2025, and the parties are directed to submit a completed Case Management Plan by January 27, 2025.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 28.

Dated: November 13, 2024                              SO ORDERED:
White Plains, New York

                                                            NELSON S. ROMÁN
                                                       United States District Judge

16

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

## AMENDED
## COMPLAINT

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore _not_ contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include _only_: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                    Middle Initial                Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | Plaintiff's Signature |
|---|---|

| First Name | Middle Initial | Last Name |
|---|---|---|

| Prison Address |
|---|

| County, City | State | Zip Code |
|---|---|---|

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

UNITED STATES DISTRICT COURT                    Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

                                        **CIVIL CASE DISCOVERY PLAN**

                    Plaintiff(s),       **AND SCHEDULING ORDER**

    - against -

                    Defendant(s).       _____ CV _____ (NSR)

-------------------------------------------------------------x

 This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties are free to withhold consent without adverse substantive consequences.  (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than _____.

7.      Non-expert depositions shall be completed by _____.

      a.      Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

      b.      Depositions shall proceed concurrently.

      c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

_____

_____

Nelson S. Román, U.S. District Judge